```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON


DONALD R. KISER,

        Plaintiff

v.                                  Civil Action No.: 2:04-1214

J.D. FERRIS, and
MINGO COUNTY SHERIFF'S DEPARTMENT, and
MINGO COUNTY COMMISSION,

        Defendants
```

## MEMORANDUM OPINION AND ORDER

Pending are motions filed (1) by the Mingo County Commission and the Mingo County Sheriff's Department (a) to compel plaintiff to testify fully regarding facts about Lisa Francis and Susan Smith, filed August 19, 2005, (b) to compel plaintiff to testify fully regarding his November 15, 2003, telephone conversations with attorney Greg Smith, or, alternatively, to preclude plaintiff from using any evidence regarding those conversations, filed August 22, 2005, and (c) for summary judgment, filed September 22, 2005; and (2) by J.D. Ferris (a) to compel plaintiff to testify fully regarding facts about Lisa Francis and Susan Smith, or, alternatively, to preclude plaintiff from introducing at trial any evidence regarding Ms. Francis and Ms. Smith, filed August 23, 2005, (b)

to compel plaintiff to testify regarding his November 15, 2003, conversations with counsel or, in the alternative, to preclude plaintiff from using any evidence regarding those conversations, filed August 30, 2005, (c) to extend time to complete discovery, filed September 2, 2005, (d) to compel plaintiff to disclose an alleged tape of Deputy James Smith, filed September 2, 2005, and (e) for summary judgment, filed September 22, 2005; and (3) by plaintiff (a) to amend the complaint, filed August 24, 2005, (b) to compel the Mingo County Sheriff's Department and Mingo County Commission to completely and fully answer discovery, filed August 29, 2005, (c) for a protective order, filed September 2, 2005, and (d) to compel for <u>in</u> <u>camera</u> review all allegedly privileged material and to compel defendants to reveal specific information they seek to protect and grounds upon which such protection is warranted, filed September 8, 2005.

I.

Plaintiff Donald R. Kiser is a physician employed in Parkersburg, West Virginia.  Defendant J.D. Ferris was at all relevant times a deputy employed by the defendant Mingo County Sheriff's Department ("Department").  The Department and the

2

defendant Mingo County Commission ("Commission") are political subdivisions of the State of West Virginia.

Plaintiff and his wife, Kristy Kiser, are divorced. One child resulted from the union. Plaintiff alleges as follows:

> As a result of said divorce, the plaintiff had <u>court ordered</u> visitation by an Amended Interim Order, which stated that the plaintiff have visitation with the child from Noon until 2:00 p.m. on the following dates: Thursday, November 6, 2003; Friday, November 14, 2003; Saturday, November 15, 2003; Wednesday, November 19, 2003; Sunday, November 23, 2003; and Wednesday, November 26, 2003.

(Am. Compl. ¶ 8 (emphasis added).) On November 15, plaintiff retrieved his child as planned.

For unspecified reasons, however, plaintiff asserted he feared for the child's well being if returned to Ms. Kiser. After contacting the authorities, plaintiff chose not to return the child as required by the Amended Interim Order. As a result, the Department arrested plaintiff on November 15, 2003 ("2003 arrest"), after Ms. Kiser complained about the child not being returned. Ferris was the arresting officer. Plaintiff maintains Ferris was engaged in a relationship with Ms. Kiser. The charges arising out of the 2003 arrest were ultimately dismissed.

On December 2, 2004, plaintiff instituted this action. He alleges the following claims under, <u>inter alia</u>, 42 U.S.C. §

3

1983: (1) unlawful arrest, (2) excessive force, (3) unlawful retaliation and conspiracy, (4) malicious prosecution, (5) municipal liability, and (6) supervisory liability.

On February 23, 2005, plaintiff was arrested a second time for "multiple felony counts of possession with intent to deliver a controlled substance."  (Ferris' Resp. at 4.)  These state charges remain pending.  Although the charges were expected to be presented at the September 2005 grand jury, the court has been advised by counsel for the Department and the Commission (collectively "the governmental defendants") that the charges will not be considered this term.

Plaintiff's employment was not affected by the 2003 arrest.  He was, however, terminated on May 12 after the 2005 arrest.  At the time of his termination, plaintiff was earning $30,000 per month.  Prior to plaintiff's August 9, 2005, deposition, he had advised defendants he had not incurred lost income as a result of the 2003 arrest.  Until his deposition, he also never alluded to his belief the 2005 arrest was in retaliation for the institution of this action.  When deposed, however, plaintiff testified as follows:

    Q.    Why are you no longer employed at The Wellness Center?

4

> A. Because of an arrest that was made by the . . . [Department] on me and the owner felt that I was, in his own words, a lightening rod to bring the police and the feds down on his business so he said he had no choice but to let me go.
>
> Q. Do you contend – in other words, it didn't have anything to do with your arrest on November 15, 2003?
>
> . . . .
>
> A. Everything was fine until I filed this civil suit against Mingo County. I filed the civil suit against Mingo County for false arrest and that popped up in the <u>Williamson Daily News</u> in December 2004 and then two months later the sheriff's department arrests me on these ludicrous charges. I'm a physician. Two months later they arrest me for possession with intent to deliver a controlled substance for writing prescriptions outside of an office setting. And the reason they did this was because of the civil suit I filed against them because of this false arrest. And there are several deputies in that department . . . who will testify that the only reason why they arrested me was because of the civil suit I got against the county. . . . I got [deputy] James Smith on tape . . . .

(Dep. of Donald R. Kiser at 8-10.) It was also learned during the deposition that the amended interim order, which plaintiff originally alleged was in force on the date of his first arrest, in fact was not entered until November 19, 2003.

Plaintiff now moves to amend the complaint to, <u>inter alia</u>, allege (1) the amended interim order was not in force on the day of his first arrest, (2) he suffered lost income as a

5

result of the 2005 arrest, and (3) his 2005 arrest was in retaliation for the institution of this action.

The governmental defendants oppose the motion to amend, asserting (1) plaintiff had reason to believe shortly after his 2005 arrest that it was retaliatory in nature but he failed to move to amend until just prior to the discovery deadline, (2) plaintiff always contended a visitation order was in place up until his August 9, 2005, deposition when he announced for the first time that the visitation order had not been entered until after the 2003 arrest, (3) the original complaint only alleged the illegality of the 2003 arrest, (4) plaintiff failed to identify during discovery the alleged tape recordings he claims substantiate the retaliatory nature of his 2005 arrest, and (5) defendants would be prejudiced by having to defend the case on an incomplete discovery record.  Defendant Ferris opposes the motion to amend on the grounds that (1) it is untimely and lacking good cause, and (2) it is barred by the doctrine of judicial estoppel.

All parties are in agreement that if the motion to amend is granted, this action must be stayed pending resolution of the 2005 criminal charges.  (Pl.'s Reply at 5; govtl. defs.' resp. at 9; Ferris Resp. at 9.)

II.

A. Governing Standards

Regarding judicial estoppel, the seminal case in this circuit is <u>Lowery v. Stovall</u>, 92 F.3d 219 (4th Cir. 1996). After observing that "judicial estoppel is a matter of federal law, not state law[,]" the court of appeals in <u>Lowery</u> observed as follows:

> [T]here are certain elements that have to be met before courts will apply judicial estoppel.
>
> First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. And the position sought to be estopped must be one of fact rather than law or legal theory.
>
> Second, the prior inconsistent position must have been accepted by the court. The insistence upon a court having accepted the party's prior inconsistent position ensures that judicial estoppel is applied in the narrowest of circumstances. Indeed, "the prior success rule narrows the scope of judicial estoppel to the point at which the necessity of protecting judicial integrity outweighs the ramifications of that protection upon the litigant and the judicial system." Because of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party, judicial estoppel must be applied with caution.
>
> Finally, the party sought to be estopped must have "intentionally misled the court to gain unfair advantage." Indeed, we have stated that this factor is the "determinative factor" in the application of judicial estoppel to a particular case. Thus, courts

7

>will not apply judicial estoppel "when a party's prior position was based on inadvertence or mistake."

Id. at 224 (citations omitted).

Regarding the standards for amendment, Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Several judges in this district have concluded Rule 16(b) tempers this broad discretion when a judicial officer has previously entered a scheduling order setting a deadline for amended pleadings. See, e.g., Stewart v. Coyne Textile Servs., 212 F.R.D. 494, 495-96 (S.D. W. Va. 2003)(Chambers, J.); Burton v. United States, 199 F.R.D. 194, 196 (S.D. W. Va. 2001)(Staker, J.)(applying standard to amended answer); Holland v. Cardiff Coal Co., 991 F. Supp. 508, 516 (S.D. W. Va. 1997) (Faber, J.); Marcum v. Zimmer, 163 F.R.D. 250, 254 (S.D. W. Va. 1995)(Haden, J.).[1]

After the pleading amendment deadline has passed, these authorities require a showing of "good cause" to first support the modification of the deadline. If good cause is present, the

---

[1] Our court of appeals has never adopted the Rule 16(b) standard for amendments in a published opinion. Absent guidance from the court of appeals on this issue, Judge Keeley recently declined to apply the Rule 16(b) standard. See Arbaugh v. Board of Educ., 329 F. Supp.2d 762, 766-67 (N.D. W. Va. 2004).

movant is then required to satisfy the more liberal Rule 15(a) standard.

B.   Analysis

1.   Judicial Estoppel

Assuming satisfaction of the first element, defendants cannot demonstrate the second and third prerequisites to invoke judicial estoppel.  First, defendants point to no place in the record where the court accepted plaintiff's position that the amended interim order was in place at the time of the 2003 arrest.  Second, there is little indication that plaintiff intentionally misled the court to gain unfair advantage.  Instead, the mistaken allegation appears to have stemmed from plaintiff's uncritical adoption of defendants' assertion that the amended interim order was in force at the time of his 2003 arrest.  At most, the prior position was based on inadvertence or mistake, both of which are insufficient as a matter of law for invoking judicial estoppel.

Inasmuch as defendants have failed to make the necessary showing, the court concludes judicial estoppel has no application here.

### 2. The Rule 15(a) and 16(b) Standards

The focus for Rule 16(b) purposes is whether the movant acted diligently in seeking to amend. As the governmental defendants note, plaintiff waited for some time following the 2005 arrest before moving to amend in August. On the other hand, three considerations militate against a finding that good cause is lacking. First, the 2005 arrest post-dated the complaint, and it doubtless took plaintiff at least some time to (1) appreciate its significance in this action, and (2) conduct the investigation required by Rule 11(b)(2) and (3). Second, the 2005 arrest came subsequent to the February 7 deadline for amended pleadings. Third, the requested amendment preceded the close of discovery.[2] To be sure, plaintiff could have moved more

---

[2]These same considerations apply to another contested ground for amendment, namely the lost income allegations. Plaintiff was not terminated until May 12, 2005, just over three months after he sought to amend.

Regarding the proposed pleading modifications relating to the amended interim order, plaintiff's investigation should have revealed the entry date came after his 2003 arrest. This
(continued...)

promptly.  In view of the totality of the circumstances, however, the court cannot find diligence so lacking as to justify denying the proposed amendment.

Inasmuch as plaintiff has satisfied the good cause standard, the court next examines the more liberal Rule 15(a) standard.  Defendants point to the putative prejudice they will suffer if the amendment is granted.  In each instance, however, the surprise engendered by the amended allegations can be cured through additional discovery and a schedule modification.  Further, from the standpoint of both judicial economy and consistency of judgments, the allegations arising out of the 2003

---

[2](...continued)
oversight, however, is ameliorated by the following representation:

> When the Plaintiff originally filed the instant lawsuit, the Plaintiff was under the impression that he had been arrested on November 15, 2003, because he was in violation of a court order requiring him to return his infant son to his estranged wife on November 15, 2003. The defendants told him this and have never wavered from this position publicly.
>
> . . . .
>
> The Plaintiff and his counsel only became aware of the discrepancy during the Plaintiff's deposition on August 9, 2005.

(Pl.'s Reply at 4.)  Perhaps of greatest significance, however, is that no party disputes the apparent truth of the amended allegations over those mistaken ones included in the amended complaint.

and 2005 arrests should be developed and tried in the same action. Inasmuch as undue delay, bad faith, dilatory motive, and undue prejudice are absent, the court ORDERS that the motion to amend be, and it hereby is, granted. The court further orders that the second amended complaint be, and it hereby is, filed today.

### 3. Stay of Further Proceedings

As noted, all parties are in agreement that if the amendment is granted, further proceedings should be stayed pending the outcome of the charges stemming from the 2005 arrest. The agreement appears to be in accordance with controlling authority. See, e.g., Deakins v. Monaghan, 484 U.S. 193, 202-03 (1988); Suggs v. Brannon, 804 F.2d 274, 280 (4th Cir. 1986). The court, accordingly, ORDERS that this action be, and it hereby is, stayed and retired to the inactive docket pending the final outcome of all state proceedings associated with the 2005 arrest. The court further ORDERS that the parties file a report every three months to update the court on the status of the state proceedings.

In view of the stay, the court ORDERS that the remaining pending motions be, and they hereby are, denied without prejudice to their re-filing at a later time.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: October 21, 2005

John T. Copenhaver, Jr.
United States District Judge