IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

DONALD R. KISER,

       Plaintiff,

v.                                    Case No. 2:04-cv-01214

J.D. FERRIS, in his
individual and official
capacity as a sheriff's
deputy for the County of
Mingo, MINGO COUNTY SHERIFF'S
DEPARTMENT, and MINGO COUNTY COMMISSION,

       Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court are a Motion to Dismiss filed by J.D. Ferris (docket sheet document # 129) and a Motion to Dismiss filed by the Mingo County Sheriff's Department and the Mingo County Commission (# 131).  This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PLAINTIFF'S ALLEGATIONS

### Allegations against defendant J.D. Ferris

Plaintiff's Second Amended Complaint asserts that, during the course of their divorce proceedings, Plaintiff and his ex-wife, Kristy Kiser, negotiated a visitation schedule to permit Plaintiff

to have custodial visitation with his infant son on certain dates and at certain times.  (# 98 at 2, ¶ 8).  On November 15, 2003, Plaintiff was scheduled to have visitation with his son from 12:00 p.m. until 2:00 p.m.  (<u>Id.</u>, ¶ 9).  On that date, Plaintiff picked up his son, but was delayed for about 30 minutes because of what he alleges was misconduct by his ex-wife at the time of delivery.  (<u>Id.</u>, ¶ 10).  Plaintiff did not return his son to Ms. Kiser by 2:00 p.m. "because the Plaintiff reasonably believed that keeping his son was necessary to protect the welfare of his son."  (<u>Id.</u>, ¶ 11).

The Second Amended Complaint further states, upon information and belief, that Ms. Kiser contacted defendant J.D. Ferris and requested that he arrest Plaintiff for failing to return her son.  (<u>Id.</u>, ¶ 13).  Plaintiff states that Ferris obtained a warrant for Plaintiff's arrest, citing a violation of West Virginia Code § 61-2-14d(a), which states that:

> Any person who conceals, takes or removes a minor child in violation of any court order and with the intent to deprive another person of lawful custody or visitation rights shall be guilty of a felony, and upon conviction thereof, shall be imprisoned in the penitentiary not less than one nor more than five years, or in the discretion of the court, shall be imprisoned in the county jail not more than one year or fined not more than one thousand dollars, or both fined and imprisoned.

W. Va. Code § 61-2-14d(a).  Plaintiff further states that he was arrested on November 15, 2003, pursuant to that warrant.  (<u>Id.</u>, ¶¶ 14-20).

2

The Second Amended Complaint alleges that Plaintiff's arrest was made based upon an "Amended Interim Order" setting forth the proposed visitation schedule, which had been agreed to by Plaintiff and Ms. Kiser, and executed by their counsel, but which had not yet been entered by the Family Court of Wood County, West Virginia.[1] Importantly, Plaintiff alleges that defendant Ferris spoke by telephone with Plaintiff on November 15, 2003 and recited both the applicable West Virginia Code section provision and the applicable "Amended Interim Order."  Thus, Ferris should have seen that the "Amended Interim Order" did not bear a judge's signature.  In fact, Plaintiff alleges that the Amended Interim Order was not entered until November 19, 2003, four days after Plaintiff's arrest.  (Id., ¶¶ 22-23).  Consequently, Plaintiff alleges that the warrant for his arrest for a violation of W. Va. Code § 61-2-14d(a) was invalid and that Plaintiff was unconstitutionally arrested on such a charge.  (Id., ¶¶ 14-16).

Plaintiff further alleges that defendant Ferris did not make any attempt to determine whether Plaintiff "reasonably believed such action (in keeping his son) was necessary to preserve the welfare of the minor child," in accordance with W. Va. Code § 61-2-14d(c).  (Id., ¶ 24).  Plaintiff further alleges that, by the time

---

[1]   The "Amended Interim Order" was supposed to be attached to the Second Amended Complaint as Exhibit A, but it was not. The "Amended Interim Order" is in the record at docket # 90-5 at 1-2, bearing deposition exhibit labels.  It does not bear the signature of a Family Court Judge.

3

he was arrested, his son was back in the custody of Ms. Kiser.  The charge against Plaintiff arising out of his arrest on November 15, 2003 was subsequently dismissed.  (<u>Id.</u>, ¶¶ 27-28).  Plaintiff alleges that the conduct of defendant Ferris was motivated, in part, because he had been involved in a sexual relationship with Ms. Kiser.  (<u>Id.</u>, ¶ 26).

<u>Allegations against the Mingo County defendants</u>

After the dismissal of the November 15, 2003 charge, Plaintiff filed the instant lawsuit on November 12, 2004.  (<u>Id.</u>, ¶ 29).  Plaintiff was subsequently arrested on February 23, 2005 by the Mingo County Sheriff's Department on 25 charges of illegally issuing prescriptions for controlled substances, in violation of W. Va. Code § 60A-4-401(a)(ii).  (<u>Id.</u>, ¶ 30).  Plaintiff's Second Amended Complaint alleges that his second arrest was made in retaliation for his filing of this lawsuit, and alleges that employees of the Mingo County Sheriff's Department have stated that his arrest was made in retaliation for the filing of this lawsuit.  (<u>Id.</u>, ¶¶ 31-32).  The Second Amended Complaint further alleges that the defendants engaged in a conspiracy against Plaintiff.  (<u>Id.</u>, ¶ 50).

Plaintiff alleges that, as a result of the second criminal charges filed against him, which ultimately resulted in Plaintiff's

4

guilty plea to drug charges in this federal court[2], he has lost his employment and continues to suffer significant financial damages. (Id., ¶ 33).  Plaintiff further alleges that the conduct of the defendants was "outrageous and malicious and constitutes intentional infliction of emotional distress, warranting an award of punitive damages against the defendants." (Id., ¶ 34).

Plaintiff's Second Amended Complaint contains six counts, which include claims of false arrest for child concealment (Count I), use of excessive force during the arrest for child concealment (Count II), unlawful retaliation by Ferris and conspiracy between Ferris and a Mingo County magistrate concerning his first arrest, and unlawful retaliation and conspiracy by the defendants concerning his second arrest (Count III), malicious prosecution as to both arrests (Count IV), municipal liability (Count V), and supervisory liability (Count VI).  Plaintiff seeks compensatory and

_____

[2] Subsequent to the filing of the Second Amended Complaint, on April 17, 2007, Plaintiff was indicted by a federal grand jury in the United States District Court for the Southern District of West Virginia in an 18 count indictment, which included among other things, allegations of the unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841 and 846. (United States v. Kiser, No. 2:07-cr-00074-01, Indictment, # 1). On June 5, 2007, Plaintiff pled guilty to Count One of the indictment. (Id., Written Guilty Plea, # 77).  On February 6, 2008, Plaintiff was sentenced to serve 87 months in a federal correctional facility, which he is presently serving at FCI Ft. Dix in New Jersey. (Id., Judgment in a Criminal Case, # 125). Because these charges duplicated the Mingo County drug charges, the Mingo County charges were dismissed by the Mingo County prosecutor, pursuant to a Final Nolle Prosequi Order on July 31, 2008.  (# 131, Ex. 4).

punitive damages, as well as injunctive relief in the form of training and supervision and discipline of the defendants.

### THE DEFENDANTS' MOTIONS TO DISMISS

#### Defendant Ferris' Motion to Dismiss

On July 31, 2009, defendant J.D. Ferris filed a Motion to Dismiss, with accompanying exhibits (# 129), and a Memorandum of Law (# 130). Defendant Ferris's Memorandum of Law asserts that he has qualified immunity for the claim of false arrest discussed in Count I of Plaintiff's Second Amended Complaint. Ferris contends that the Second Amended Complaint fails to state claims of excessive force and retaliation and conspiracy as alleged in Counts II and III, because there are no facts presented to give rise to such claims. He also argues that Plaintiff's claim for malicious prosecution (Count IV) relating to the drug charges is barred by his subsequent conviction.

#### The Mingo County Defendants' Motion to Dismiss

On July 31, 2009, the Mingo County Sheriff's Department and the Mingo County Commission (collectively "the Mingo County Defendants") filed a motion to Dismiss, with accompanying exhibits (# 131), and a Memorandum of Law in support thereof (# 132). The Memorandum of Law asserts that Plaintiff's Second Amended Complaint fails to state a claim against them. Specifically, they assert that Plaintiff's allegations contending that his second arrest on the drug charges was retaliatory and that he was maliciously

6

prosecuted must fail because those charges were not resolved in his favor, and his guilty plea in this federal court is conclusive evidence of probable cause for those charges.

## STANDARD OF REVIEW

In <u>Bell Atlantic Corp v. Twombly</u>, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." <u>Id.</u> at 555.

The Supreme Court elaborated on its holding in <u>Twombly</u> in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in <u>Twombly</u>. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [<u>Twombly</u>, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim

7

for relief survives a motion to dismiss.  *Id.*, at 556. *
* *

> In keeping with these principles a court considering
> a motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether
> they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

### A.   Plaintiff's claim of false arrest (Count I).

Count I of Plaintiff's Second Amended Complaint arises out of
Plaintiff's allegations that defendant Ferris unlawfully arrested
and charged Plaintiff with felony child concealment under West
Virginia Code § 61-2-14d(a), using an allegedly invalid warrant,
without probable cause.  (# 98 at 5).

Defendant Ferris asserts that he is entitled to qualified
immunity on all of Plaintiff's claims against him.  As noted by
defendant Ferris in his Memorandum of Law, public officials are not
liable for monetary damages if they can show that their conduct did
not violate clearly-established statutory or constitutional rights
of which a reasonable person would have known.  See Wilson v.
Layne, 526 U.S. 603, 609 (1999).  Qualified immunity exists to
protect officers in the performance of their duties unless they are
"plainly incompetent" or they "knowingly violate the law." Malley
v. Briggs, 475 U.S. 335, 341 (1986);  Doe v. Broderick, 225 F.3d

8

440, 446 (4th Cir. 2000).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the allegations do not give rise to a constitutional violation, no further inquiry is necessary.  Id.  If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case.  Id.  "'The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct is unlawful in the situation he confronted.'"  Short v. Walls, Slip Copy, 2009 WL 914085 *9 (S.D. W. Va. 2009)(quoting Katz, 533 U.S. at 202).

Allegations that an arrest was made without probable cause implicate the right to be free from unreasonable searches and seizures under the Fourth Amendment, and state a claim cognizable under § 1983.  See Street v. Surdyka, 492 F.2d 368 (4th Cir. 1974).  The Supreme Court of the United States has held that:

> Whether that arrest was constitutionally valid depends in turn on whether, at the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

Beck v. State of Ohio, 379 U.S. 89, 91 (1964).   The Beck Court
further stated:

> When the constitutional validity of an arrest is
> challenged, it is the function of a court to determine
> whether the facts available to the officers at the moment
> of the arrest would "warrant a man of reasonable caution
> in the belief" that an offense has been committed.
> Carroll v. United States, 267 U.S. 132, 162, 45 S. Ct.
> 280, 288, 69 L. Ed.2d 543.   If the court is not informed
> of the facts upon which the arresting officers acted, it
> cannot properly discharge that function.

Id. at 96.

Defendant Ferris's Memorandum of Law states:

> Plaintiff's allegations of "illegal" or "false"
> arrest as contained in the Second Amended Complaint rest
> on two theories: 1) that the warrant Ferris had obtained
> for the arrest was blank or facially defective; and 2)
> that the charges against him were improper because the
> court order which supported the charge of child
> concealment was not actually entered by the issuing court
> until three days after the arrest.
>
> Both prongs of plaintiff's argument should be
> dismissed summarily by this Court.   As noted above, the
> charge of child concealment under W. Va. Code §61-2-
> 14d(a) is a felony in West Virginia.   As made clear by
> the Second Amended Complaint, the plaintiff was in
> possession of his child and was depriving the child from
> the lawful custodial parent, Christy [sic; Kristy] Kiser,
> in violation of the terms of an apparent court order.
> The Second Amended Complaint concedes that the defendant
> Ferris had been provided with a copy of the order, that
> although not signed by the Court, had been signed a week
> earlier by all counsel involved in the matter pending
> before the Wood County Family Court.   Additionally, the
> Second Amended Complaint sets forth facts demonstrating
> that the relevant parties to the dispute were acting in
> conformity with the material terms of the order before
> the plaintiff refused to return the subject child.   As
> noted above, plaintiff's retention of the child was a
> violation of that apparent order.   This information
> supported a charge of felony child concealment under West
> Virginia law, as an objectively reasonable officer in

10

> Ferris'[s] position would have had a reasonable basis to
> believe that the order was in force.  Indeed, there is no
> allegation that anyone had provided him with contrary
> information.  Based on this information alone, Ferris had
> the legal right to arrest the plaintiff *without a
> warrant*.

(Id. at 6-7).  Ferris's Memorandum of Law further addresses the

authority on warrantless arrests as follows:

> It has long been held in West Virginia that "an officer
> with authority to conserve the peace, may, with or
> without a warrant, arrest any person who he, upon
> probable cause, believes had *committed* or is committing
> a felony, though it afterwards appears that no felony was
> actually perpetrated."  Syl. pt. 2, State v. Duvernoy,
> 156 W. Va. 578, 195 S.E.2d 631 (1973); see also Syl. pt.
> 2, State v. Drake, 170 W. Va. 169, 291 S.E.2d 484 (1982);
> Syl. pt. 1, State v. Sprouse, 171 W. Va. 58, 297 S.E.2d
> 833 (1982); Syl. pt. 6, State v. Craft, 165 W. Va. 741,
> 272 S.E.2d 46 (1980).  The standard for determining the
> existence of probable cause to make a warrantless arrest
> is set forth in Syllabus Point 1 of State v. Plantz, 155
> W. Va. 24, 180 S.E.2d 614 (1971), which provides that,
> "Probable cause to make an arrest without a warrant
> exists when the facts and circumstances within the
> knowledge of the arresting officers are sufficient to
> warrant a prudent man in believing that an offense has
> been committed."  See also Syl. pt. 3, State v. Boswell,
> 294 S.E.2d 287 (W. Va. 1982); Syl. pt. 2, State v.
> Meadows, 292 S.E.2d 50 (W. Va. 1982); Syl. pt. 2, State
> v. Drake, supra; Syl. pt. 1, State v. Hawkins, 167 W. Va.
> 473, 280 S.E.2d 222 (1981); Syl. pt. 7, State v. Craft,
> supra; Syl. pt. 3, State v. Duvernoy, supra.  Even as
> pled by the plaintiff, Ferris had probable cause to
> arrest for a suspected violation of W. Va. Code §61-2-
> 14d(a), even in the absence of a warrant.
>
> While the mere fact that the subject order had not
> actually been signed by the Family Court of Wood County
> may have provided the plaintiff with a technical defense
> to the charges, these circumstances, much like the
> statutory defenses available to the plaintiff under W.
> Va. Code §61-2-14d(c) do not render plaintiff's initial
> arrest illegal.  Plainly, plaintiff had no right to be
> protected from a warrantless arrest under the
> circumstances alleged in the Second Amended Complaint,

11

> even if the warrant obtained by the defendant Ferris was illegal, defective or otherwise invalid. [Footnote omitted].
>
> Because the Plaintiff's Second Amended Complaint itself concedes circumstances of an arrest on charges of felony child concealment, his claims for an illegal arrest stemming from a defect in the warrant must be dismissed, as he had no constitutional right to be arrested solely through an arrest warrant.

(Id. at 7-8).

Plaintiff's Response cites Rogers v. City of Amsterdam, 303 F.3d 155 (2d Cir. 2002), in support of his argument that defendant Ferris is not entitled to qualified immunity on his false arrest claims.   In Rogers, the Second Circuit found that a police officer did not have qualified immunity for the warrantless arrest of one of a suspect because the information known to the arresting officer at the time of the arrest did not warrant a belief that the person had committed or was committing a crime.   Id. at 160.   Plaintiff urges a similar result herein.   Plaintiff further asserts that the crux of his Complaint is that "J.D. Ferris operated in a conspiracy with Eugene Crum and Kristy Kiser (who are not defendants herein); [and] that J.D. Ferris overzealously pursued the plaintiff due to his romantic involvement with Ms. Kiser . . . ."   (# 148 at 2). Thus, he asserts that defendant Ferris operated with an improper and malicious motive.

On January 11, 2010, defendant Ferris filed a reply brief again addressing the standard for qualified immunity in light of Plaintiff's assertions concerning Ferris' alleged subjective

12

motivations for the arrest.  The Reply states:

> As stated recently by the West Virginia Supreme
> Court of Appeals as it reviewed, described and adopted
> the federal standard for reviewing a motion for qualified
> immunity, an evaluating court cannot consider the alleged
> personal motives of an arresting officer in its
> determinations:
>
>> Federal law leaves no question that the
>> subjective motivations of a police officer are
>> immaterial to a determination of whether
>> qualified immunity exists in connection with
>> allegations of unreasonable search and
>> seizure, unlawful detention, and excessive
>> force.  See Anderson v. Creighton, 483 U.S.
>> 635, 641, 107 S. Ct. 3034, 97 L. Ed.2d 523
>> (1987)(holding that officer's subjective
>> beliefs are irrelevant when evaluating the
>> reasonableness of his actions).
>
> Robinson v. Pack, 223 W. Va. 828, 679 S.E.2d 660 (2009),
> (citing Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865,
> 104 L. Ed.2d 443 (1989)).

(# 150 at 2-3); see also Whren v. U.S., 517 U.S. 806, 813

(1996)(stating that "[s]ubjective intentions play no role in

ordinary probable-cause Fourth Amendment analysis"); Rowland v.

Perry, 41 F.3d 167, 173 (4th Cir. 1994)(finding that "officer's

subjective state of mind is not relevant to the qualified immunity

inquiry").  (Id.)  The Reply further states:

> Accordingly, while Plaintiff clearly contends that Deputy
> Ferris had a bad motive for carrying through with his
> arrest, the facts as alleged in his own Second Amended
> Complaint, together with the undisputed evidence that
> supports the defendant's motion, demonstrate that at the
> time of his arrest by Deputy Ferris, there was sufficient
> evidence for a reasonable law enforcement officer to
> believe that Plaintiff had intentionally withheld the
> child from its mother in violation of an apparent court
> order.  These facts supported criminal charges
> constituting a felony in West Virginia.  Given these

13

facts, there was no requirement that Deputy Ferris or any
other officer have an arrest warrant before taking
Plaintiff into custody for the alleged commission of a
felony. [Footnote omitted]. Therefore, Plaintiff's claim
of a conspiracy surrounding the issuance of the arrest
warrant are without merit.  Finally, whether or not the
plaintiff may have had a valid defense to the child
concealment charges is likewise irrelevant, as the
principle question remains whether the actions of the
officer were "objectively reasonable" in light of the
facts and circumstances presented to him.  While a
reasonable officer facing the same or similar
circumstances may have elected to defer action or to do
nothing, the question is whether it was objectively
reasonable for an officer to have arrested Plaintiff
based on the available information.  The material
allegations in the Second Amended Complaint, along with
the exhibits to defendant's original memorandum, clearly
support the reasonableness of the officer's actions.

(Id. at 3-4).

For the purpose of determining whether defendant Ferris is
entitled to qualified immunity on Plaintiff's false arrest claim in
Count I, defendant Ferris's subjective motivation for arresting
Plaintiff and charging him with felony child concealment is
irrelevant.  See also Martin v. Gentile, 849 F.2d 863 (4th Cir.
1988)(subjective bad intentions do not make a constitutional
violation out of an otherwise reasonable seizure).  Nevertheless,
the facts alleged in the Second Amended Complaint, taken in the
light most favorable to the Plaintiff, could support a finding that
defendant Ferris's conduct was not objectively reasonable.
Particularly persuasive is Plaintiff's allegation that Ferris read
to Plaintiff portions of the "Amended Interim Order" which was not
signed by a judge.  Therefore, at this stage of the proceedings,

14

the undersigned proposes that the presiding District Judge **FIND** that Count I of Plaintiff's Second Amended Complaint sufficiently state a claim upon which relief could be granted against defendant Ferris because the facts presented in the Second Amended Complaint, if proved, could demonstrate that defendant Ferris violated Plaintiff's Fourth Amendment rights. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that defendant Ferris is not entitled to qualified immunity on this claim at this stage of the case, and that the false arrest claim against defendant Ferris in Count I should go forward.

**B.   Plaintiff's excessive force claim (Count II).**

In Count II of his Second Amended Complaint, Plaintiff asserts as follows:

> The actions of Defendant Ferris constituted objectively unreasonable, excessive and unwarranted force in violation of the Plaintiff Kiser's clearly established rights, of which a reasonable person should have known, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Said Defendant's actions were willful, wanton, intentional, malicious, and done with callous or reckless disregard for the Plaintiff's constitutional rights.

(# 98 at 6). Plaintiff again alleges that his arrest was illegal and "excessive" because his son had already been returned to his mother prior to the arrest. (Id.) Plaintiff further alleges that defendant Ferris wanted the arrest to be "a matter of great publicity so that plaintiff would be damaged personally and professionally." (Id. at 6-7).

15

As noted by defendant Ferris in his Memorandum of Law, these allegations do not state a claim for "excessive force."  There are absolutely no allegations in the Second Amended Complaint concerning any use of force by defendant Ferris when he arrested Plaintiff.  Ferris' Memorandum further states:

> Indeed, the premise of this entire count is that his *mere arrest* constituted excessive force, because of his claim that it was illegal and his claim that the child that was the subject of the custody order had already been secured and returned to his mother.  As noted repeatedly above, however, there is no constitutional requirement that an illegal act (child concealment) be continuing in order for a law enforcement [officer] to make a constitutionally valid arrest.  The mere fact that the child had been secured did nothing to alter the circumstances supporting the officer's belief that a violation of West Virginia's child concealment laws had taken place.

(# 130 at 9).

Allegations of excessive force during an arrest are governed by the Fourth Amendment.  <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).  The right to make an arrest carries with it the right to use an amount of force that a reasonable officer would think necessary to take the person being arrested into custody.  <u>Martin v. Gentile</u>, 849 F.2d 863, 869 (4th Cir. 1988).

In determining whether a use of force is reasonable, the court should take into account the specific facts and circumstances of the case paying particular attention to: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers and others; and (3) whether the

suspect is resisting arrest or fleeing.  <u>Graham</u>, 490 U.S. at 396.
"The calculus of reasonableness must embody allowance for the fact
that police officers are often forced to make split-second
judgments – in circumstances that are tense, uncertain, and
rapidly-evolving – about the amount of force that is necessary in
a particular situation."  <u>Id.</u>

The allegations in Count II of Plaintiff's Second Amended
Complaint, including the incorporated paragraphs, fail to state a
claim of the use of excessive force in the course of Plaintiff's
arrest by defendant Ferris.  There are absolutely no allegations
concerning any amount of force used in the course of Plaintiff's
arrest.  Rather, the focus of Plaintiff's allegations is on the
sole fact of his arrest, which is addressed in Count I of
Plaintiff's Second Amended Complaint, which will go forward against
defendant Ferris.

Accordingly, the undersigned proposes that the presiding
District Judge **FIND** that Count II of Plaintiff's Complaint fails to
state a claim upon which relief can be granted against defendant
Ferris, and that Count II should be dismissed with prejudice.

**C.   Plaintiff's retaliation claims (Count III).**

In Count III of his Second Amended Complaint, Plaintiff
alleges that defendant Ferris arrested him and initiated the
criminal prosecution on the child concealment charge in retaliation
for, and as a result of, Plaintiff's threats to complain to Mingo

17

County authorities about Ferris's relationship with Plaintiff's ex-wife. (Id. at 6-8). Plaintiff also alleges that the defendants' arrest of Plaintiff after he filed the instant lawsuit (referring to Plaintiff's arrest on drug charges, and hereinafter referred to as "Plaintiff's second arrest"), was made in retaliation for Plaintiff's filing of the instant lawsuit. (Id. at 8).

Retaliation claims are analyzed under the First Amendment of the United States Constitution. The elements of a retaliation claim are: (1) that the plaintiff engaged in protected activity; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) that the adverse action was motivated, at least in part, by the plaintiff's protected conduct. See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).

> Under Mt. Healthy and its progeny, an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech. [Footnote omitted]. This doctrine demonstrates that, at least, where the First Amendment is concerned, the motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech precedes government action affecting that individual. [Footnote omitted].

Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).

Plaintiff alleges that his first arrest was made by defendant Ferris, at least in part, because of Plaintiff's threats to complaint to authorities about Ferris's relationship with

18

Plaintiff's ex-wife.  Plaintiff further alleges that his second arrest and prosecution were undertaken in response to, and in retaliation for, his filing of the instant lawsuit, which is protected activity under the First Amendment.  Plaintiff has also alleged that there are employees of the Mingo County Sheriff's Department who have admitted that the second arrest and prosecution was motivated, at least in part, to retaliate for Plaintiff's having filed the instant lawsuit.

The undersigned proposes that the presiding District Judge **FIND** that the allegations in Count III of Plaintiff's Second Amended Complaint concerning both of Plaintiff's arrests being made in retaliation for protected conduct are sufficient to state First Amendment retaliation claims against defendants Ferris and the Mingo County Sheriff's Department, and that these claims should go forward against those defendants.  The undersigned further proposes that the presiding District Judge **FIND** that defendant Ferris is not entitled to qualified immunity on this claim, at this stage of the proceedings.

### D.  Plaintiff's conspiracy claims (Count III)

In Count III of his second Amended Complaint, Plaintiff further alleges that the defendants engaged in a conspiracy to violate his constitutional rights.  Plaintiff does not specifically state that defendant Ferris engaged in a conspiracy.  However, the Second Amended Complaint contains allegations stating that

defendant Ferris obtained a blank warrant from Magistrate Eugene
Crum in order to falsely arrest Plaintiff on the child concealment
charge, and that he did so with a malicious purpose.  Moreover,
Plaintiff's Response to the defendants' motions states that the
crux of Plaintiff's complaint is that defendant Ferris "operated in
a conspiracy with Eugene Crum and Kristy Kiser . . . ."  (# 148 at
2).  In paragraph 50 of the Second Amended Complaint, Plaintiff
further states that his second arrest constituted a conspiracy by
"the defendants."  (# 98 at 8, ¶ 50).

Defendant Ferris's Memorandum of Law addresses the conspiracy
claims as follows:

> Finally, Plaintiff's conclusory allegations of a
> conspiracy do not establish a constitutional violation.
> To allege a claim of conspiracy, Plaintiff must establish
> the following elements: (1) an agreement between two or
> more persons, which constitute the act, and (2) the doing
> of either an unlawful act or a lawful act by unlawful
> means.  See Hamlet v. West Virginia, Slip Copy 2009 WL
> 261450 (S.D. W. Va. 2009), citing United States v.
> Burgos, 94 F.3d 849, 857 (4th Cir. 1996), cert. denied,
> 519 U.S. 1151, 117 S. Ct. 1087, 137 L. Ed.2d 221 (1997).
> Mere conclusory allegations of a conspiracy do not
> demonstrate the "meeting of the minds" element and
> therefore, fails to state a cognizable claim.  See Brown
> v. Angelone, 938 F. Supp. 340, 346 (W. D. Va. 1996).
> Plaintiff does not allege any facts to establish that
> Defendant Deputy Ferris and Magistrate Crum conspired to
> violate the Plaintiff's constitutional rights.  Indeed,
> Plaintiff does not allege any facts to establish that
> Defendant Ferris and Magistrate Crum formed an agreement
> to falsely arrest or improperly prosecute Plaintiff based
> upon insufficient evidence and his conspiracy claim,
> therefore, does not rise to the level of constitutional
> magnitude.  Moreover, as noted above, the entire premise
> of the alleged conspiracy is that plaintiff could not
> have been arrested but for the existence of an arrest
> warrant.  As described above, plaintiff's arrest did not

require a warrant.

(# 130 at 9-10).  The Mingo County Defendants' motion documents do not specifically address Plaintiff's conspiracy claims.

As noted in <u>Twombly</u> and <u>Iqbal</u>, conclusory allegations are insufficient to state a cognizable claim for relief.  The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Second Amended Complaint does not sufficiently state conspiracy claims against any of the defendants, and that the allegations concerning conspiracy as stated in Count III of the Second Amended Complaint should be dismissed with prejudice.

**E.   Plaintiff's malicious prosecution claims (Count IV).**

In Count IV of Plaintiff's Second Amended Complaint, Plaintiff alleges that the criminal charges brought against him as a result of both of his arrests constituted malicious prosecutions. Concerning the child concealment charges, Plaintiff repeats his allegations that the criminal charges resulting in his first arrest were instituted in retaliation for his intention to complain to authorities about the relationship between Plaintiff's ex-wife and defendant Ferris.  (# 98 at 8).  Plaintiff also again alleges that his second arrest and prosecution on drug charges were motivated by his filing of the instant lawsuit.  (<u>Id.</u> at 8-9).  Plaintiff further states that "[t]he malicious prosecution of the plaintiff arising from the November 15, 2003, arrest and the second arrest is an abuse of power which has caused significant emotional and

financial damage to the plaintiff and his family." (Id. at 9).

A malicious prosecution claim brought under section 1983 is grounded in the Fourth Amendment, but incorporates elements of the common law tort of malicious prosecution. Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). As noted by the Mingo County Defendants, a claim for malicious prosecution under West Virginia law requires proof of four elements: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. See, e.g., Morton v. Chesapeake and Ohio Ry. Co., 399 S.E.2d 464 (W. Va. 1990); Brooks v. City of Winston-Salem, 85 F.3d 178, 183-84 (4th Cir. 1996). (# 132 at 2).

The Mingo County Defendants have moved to dismiss the malicious prosecution claim concerning Plaintiff's second arrest on the basis that Plaintiff cannot establish an essential element of a malicious prosecution claim; that is, that the prosecution terminated in his favor. The Memorandum of Law states:

> Although plaintiff alleged that the second arrest was retaliatory, he did not allege that the prosecution following upon his second arrest was resolved in his favor. [Footnote 1 - Nor can the plaintiff now amend his Second Amended Complaint to assert the necessary allegation as the prosecution at issue did not, in fact, end favorably for the plaintiff as is set forth in more detail herein]. Since a necessary element of proof of malicious prosecution relating to his second arrest has been omitted, plaintiff cannot prevail on the cause of action at issue, and plaintiff's malicious prosecution claim, based upon his second arrest, should be dismissed

with prejudice.  Furthermore, lack of probable cause is
also an essential element of proof of malicious
prosecution.  The plaintiff has been convicted of drug
conspiracy charges.  As a matter of law, this is deemed
conclusive proof of probable cause for his arrest on such
charges.  Since the plaintiff has not alleged or cannot
in good faith allege two essential elements of his claim
for malicious prosecution based upon his second arrest,
he has not and cannot state a claim upon which relief can
be granted.

(Id.)  Defendant Ferris adopted by reference the arguments made by

the Mingo County Defendants on this claim.  (# 129 at 2).

The Mingo County Defendants' Memorandum of Law further states:

The plaintiff has not alleged and cannot allege that
criminal proceedings terminated in his favor.  To the
contrary, the plaintiff pled guilty to federal charges
and was convicted of conspiracy to distribute three
controlled substances, oxycodone, hydrocodone, and
Alprazolam, in violation of federal statute [See Exs. 1-
3].  The criminal case brought by the State of West
Virginia was subsequently dismissed without prejudice at
the request of the Mingo County Prosecuting Attorney, on
the grounds that the plaintiff had been sentenced to a
term of imprisonment based upon similar federal criminal
charges [See Ex. 4].  Although the specific prosecution
complained of by the plaintiff in his Second Amended
Complaint related to the state charges rather than the
federal charges to which the plaintiff pled guilty, the
offenses at issue in both cases are the same or
substantially similar in regard to both the substance of
the crimes and the times and places the crimes were
committed by the plaintiff.

Reference to the federal indictment shows that Count
One, to which the plaintiff pled guilty, relates to
conspiracy, with Arlene A. Gartin and others, to
distribute oxycodone, hydrocodone, and Alprazolam, from
February, 2003, through early 2007, in Mingo County. [See
Ex. 5].  Reference to the criminal complaints filed in
the state cases shows multiple charges of possession with
intent to deliver oxycodone, hydrocodone, and Alprazolam
to Arlene Gartin, on various dates from May 15, 2003,
until January 10, 2005, at various locations within Mingo
County. [See Ex. 6].  Although the terminology utilized

23

in the relevant federal and state criminal statutes
differs, the crimes being prosecuted were based upon the
same acts, involved the same controlled substances, and
were committed by the same persons, including the
plaintiff. Thus, dismissal is appropriate on the grounds
that the plaintiff cannot prove that the relevant
proceedings terminated in his favor.

(<u>Id.</u> at 3-4).

Plaintiff pled guilty in this Court to charges that were
substantially similar to those with which he was charged in the
Magistrate Court of Mingo County, and which arose out of the same
conduct. The dismissal of the state charges on July 31, 2008,
following entry of judgment in the federal prosecution on February
6, 2008, does not constitute a termination in Plaintiff's favor.
Furthermore, Plaintiff's guilty plea and conviction for engaging in
a conspiracy to distribute controlled substances conclusively
establishes probable cause therefor. Thus, as argued by the
defendants, Plaintiff cannot establish the necessary elements of a
malicious prosecution claim. Accordingly, the undersigned proposes
that the presiding District Judge **FIND** that Plaintiff's Second
Amended Complaint fails to state a claim of malicious prosecution
concerning his prosecution on drug charges.

Defendant Ferris's Motion to Dismiss and Memorandum of Law
failed to address Plaintiff's malicious prosecution claim
concerning his child concealment charge. As noted by Plaintiff in
his Second Amended Complaint, following Plaintiff's arrest, the
child concealment charge was dismissed, "because there was no legal

24

basis for the defendants to have arrested the plaintiff on November 15, 2003." (# 98 at 5).  Therefore, that prosecution terminated in Plaintiff's favor.  Plaintiff's Second Amended Complaint further alleges that his arrest and prosecution on the child concealment charge were undertaken by defendant Ferris in a malicious manner and without probable cause, and thus, meets all of the elements of a malicious prosecution claim.  (Id. at 7-9).

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Second Amended Complaint sufficiently states a claim of malicious prosecution against defendant Ferris concerning Plaintiff's having been charged with child concealment on November 15, 2003, that defendant Ferris is not entitled to qualified immunity on this claim at this stage of the proceedings, and that this malicious prosecution claim should go forward against him.

**F.   Plaintiff's other claims against the Mingo County Defendants.**

In Counts V (Municipal Liability) and Count VI (Supervisory Liability), Plaintiff alleges that his constitutional rights were violated by the implementation of customs, policies or official acts by Ferris, the Mingo County Sheriff's Department, and the Mingo County Commission concerning the following:

> the failure to train, supervise or discipline Mingo County agents and/or officers regarding the circumstances which constitute probable cause for an arrest and regarding the proper use of force during an arrest; and the failure to adequately train, supervise, and

25

discipline Mingo County agents and/or officers regarding
unlawful arrest and retaliation, malicious prosecution
and abuse of process against citizens for simply
exercising their Federal and State constitutional rights.

(# 98 at 9).  Plaintiff further alleges, upon information and
belief that certain Mingo County agents and/or officers "have
admitted improperly retaliating against the plaintiff so as to
create a reasonable inference that such misconduct is tolerated by
the defendants." (Id.)

The Second Amended Complaint further alleges that the Mingo
County Sheriff's Department and the Mingo County Commission had
actual or constructive knowledge of the policy, practice or custom
that led to the alleged violation of Plaintiff's constitutional
rights and have exhibited a deliberate indifference to the
violations of citizens' rights. (Id. at 10).

The sheriff of each county is not a subordinate employee of
the respective county commission; the sheriff is elected by the
voters of that county.  While each county commission has a limited
role with respect to the Sheriff's Department's budget, the
commissioners have no role in law enforcement decisions.
Accordingly, the undersigned proposes that the presiding District
Judge **FIND** that Plaintiff's Second Amended Complaint fails to state
a claim against the Mingo County Commission.

The undersigned further proposes however, that the presiding
District Judge **FIND** that Plaintiff's Second Amended Complaint
sufficiently states claims of municipal and supervisory liability

26

against the Mingo County Sheriff's Department, as the employer of defendant Ferris, and that those claims should go forward.

<u>**RECOMMENDATION**</u>

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge:

1. **GRANT** the Motion to Dismiss filed by defendant J.D. Ferris (# 129), as it pertains to Count II, the conspiracy claim contained in Count III, and the malicious prosecution claim concerning the drug charges contained in Count IV of Plaintiff's Second Amended Complaint;

2. **DENY** the Motion to Dismiss filed by J.D. Ferris (# 129) as it pertains to Count I, the retaliation claim concerning Plaintiff's arrest on the child concealment charge contained in Count III, and the malicious prosecution claim concerning Plaintiff's child concealment charge contained in Count IV of Plaintiff's Second Amended Complaint;

3. **GRANT** the Motion to Dismiss filed by the Mingo County Commission (# 131);

4. **DENY** the Motion to Dismiss filed by the Mingo County Sheriff's Department (# 131), as it pertains to the retaliation claim concerning Plaintiff's second arrest on drug charges contained in Count III, and the claims in Counts V and VI of Plaintiff's Second Amended Complaint;

27

5.   **GRANT** the Motion to Dismiss filed by the Mingo County Sheriff's Department (# 131), as it pertains to the conspiracy claim contained in Count III, and the malicious prosecution claim concerning the drug charges contained in Count IV of Plaintiff's Second Amended Complaint; and

6.   Leave this matter referred to the undersigned for additional proceedings and submission of proposed findings and recommendation for disposition concerning the remaining claims.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (mailing), from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder

v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Judge Copenhaver.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

    February 8, 2010                     Mary E. Stanley
         Date                        Mary E. Stanley
                                United States Magistrate Judge

29