UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


DONALD R. KISER,

          Plaintiff,

v.                                Civil Action No. 2:04-1214

J.D. FERRIS, in his
individual and official
capacity as a Sheriff's
deputy for the County of
Mingo, and MINGO COUNTY SHERIFF'S
DEPARTMENT, and MINGO COUNTY COMMISSION,

          Defendants.


MEMORANDUM OPINION AND ORDER


          Pending are defendant Deputy J. D. Ferris' motion to dismiss and the Mingo County Commission's and Mingo County Sheriff's Department's motion to dismiss, both filed July 31, 2009.

          This action was previously referred to Mary E. Stanley, United States Magistrate Judge, who has submitted her Proposed Findings and Recommendations ("PF&R") pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B).  The magistrate judge's PF&R was entered on February 8, 2010.  On February 25, 2010, Deputy Ferris and plaintiff filed objections to the PF&R.

I.

A.   The Two Arrests


        The objections by both parties relate to plaintiff's

two arrests by law enforcement.  The first arrest ("first

arrest"), on November 15, 2003, as discussed more fully <u>infra</u>,

resulted from plaintiff's failure to timely return his son to his

former spouse, Kristy Kiser, despite a warning from Deputy Ferris

to do so.  Following the warning, Deputy Ferris arrested

plaintiff based upon a perceived violation of West Virginia Code

§ 61-2-14d(a).  That section provides for felony treatment

of one "who conceals, takes or removes a minor child in

violation of any court order and with the intent to deprive

another person of lawful custody or visitation rights . . . ."

<u>Id.</u>

        The second arrest ("second arrest"), on February 23,

2005, was made by unnamed members of the Mingo County Sheriff's

Department.  It was based upon 25 state charges alleging that

plaintiff illegally issued controlled substances in violation of

West Virginia Code § 60A-4-401(a)(ii).  Plaintiff was

subsequently charged by the United States Attorney on April 17,

2

2007, in an 18-count indictment filed in this district alleging,
<u>inter</u> <u>alia</u>, violations of 21 U.S.C. §§ 841 and 846.  Following
his guilty plea to Count One of the federal indicment, which
alleged that he knowingly and intentionally conspired to
distribute oxycodone, hydrocodone, and Alprazolam, plaintiff was
sentenced to 87 months imprisonment.  A July 31, 2008, "FINAL
NOLLE PROSEQUI ORDER" entered by the state circuit judge
presiding over the state charges dismissed those offenses,
finding "[i]n April 2007, the Defendant was indicted for similar
charges in the United States District Court for the Southern
District of West Virginia." (Ex. 4, Defs.' Mot. to Dism.).


B.   Deputy Ferris' Objections


          Deputy Ferris challenges the magistrate judge's
conclusion that he is not entitled to qualified immunity on the
unlawful seizure claim found in Count One of the Second Amended
Complaint.  Count One is based upon the circumstances surrounding
the first arrest.  The familiar probable cause standard governs
the claim:

> Probable cause is a complete defense to a § 1983
> unconstitutional arrest claim brought under the Fourth
> Amendment. Probable cause exists when the "facts and
> circumstances within the officer's knowledge . . . are
> sufficient to warrant a prudent person, or one of

3

> reasonable caution, in believing, in the circumstances
> shown, that the suspect has committed, is committing,
> or is about to commit an offense."

Federal Judicial Center, Martin A. Schwartz & Kathryn R. Urbonya,
Section 1983 Litigation 61 (2nd ed. 2008); see also Devenpeck v.
Alford, 543 U.S. 146, 152-53 (2004) ("In conformity with the rule
at common law, a warrantless arrest by a law officer is
reasonable under the Fourth Amendment where there is probable
cause to believe that a criminal offense has been or is being
committed."); Maryland v. Pringle, 540 U.S. 366, 371 (2003).

Probable cause is a "nontechnical conception that deals
with the factual and practical considerations of everyday life on
which reasonable and prudent men, not legal technicians, act."
Pringle, 540 U.S. at 370 (internal quotation marks omitted).  The
arresting officer need only have "a reasonable ground for belief
of guilt," id. at 371, or, stated another way, a "probability,
and not a prima facie showing, of criminal activity . . . ."
Illinois v. Gates, 462 U.S. 213, 235 (1983).  It has been stated
as well that "a police officer may draw inferences based on his
own experience in deciding whether probable cause exists,"
Ornelas v. United States, 517 U.S. 690, 700 (1996), including
inferences "that might well elude an untrained person . . . ."
United States v. Cortez, 449 U.S. 411, 418 (1981).

4

This deferential and common-sense standard is all the more so when embedded, as here, within a qualified immunity determination.  In such a setting, it must be shown that the arresting officer acted contrary to the clearly established law governing the arrestee's seizure.  The policy goals underlying the qualified immunity defense were recently reiterated as follows:

> The goal of the doctrine is to balance two important concerns, first "the need to hold public officials accountable when they exercise power irresponsibly" and second "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  The purpose of the immunity is to allow some room for discretionary judgment in what are indisputably difficult circumstances and not to have the prospect of being blind-sided in hindsight discourage officers from the constructive tasks they can in fact perform. Thus officers will not be held liable, even if they violate statutory or constitutional rights, unless they had prior guidance which would allow them to determine that their contemplated action was improper.

Melgar ex rel. Melgar v. Greene, 593 F.3d 348, 357 (4th Cir. 2010) (citations omitted).

As noted in brief earlier, the undisputed facts relating to the first arrest are set forth in the Second Amended Complaint.  On the relevant date, Saturday, November 15, 2003, plaintiff and Ms. Kiser were in the midst of divorce proceedings.  Plaintiff had physical custody of the estranged couple's infant

5

son beginning at 12:00 p.m. on that date pursuant to a document styled "Amended Interim Order" signed by counsel for both plaintiff and Ms. Kiser in the divorce proceedings.  The Amended Interim Order lacked the signature of C. Darren Tallman, the presiding Family Court Judge.  Judge Tallman did not sign and enter the Amended Interim Order until November 19, 2003.

The Amended Interim Order explicitly provided for plaintiff to return the infant to Ms. Kiser by 2:00 p.m. on November 15, 2003.  Plaintiff did not comply.  Ms. Ferris complained to Deputy Ferris about plaintiff's actions, apparently providing him a copy of the Amended Interim Order.[1]  There is no indication that Deputy Ferris had the means to verify with the circuit clerk the entry of the Amended Interim Order inasmuch as the controversy arose on a Saturday.  Instead of acting precipitously in a tense custody dispute, however, Deputy Ferris contacted plaintiff in an effort to investigate further and warn of the consequences of unlawfully retaining custody of the infant.  According to plaintiff, Deputy Ferris "recited portions of West Virginia Code § 61-2-14d and portions of . . . [the] 'Amended Interim Order'" to him.  (Sec. Am. Compl. ¶ 15 (emphasis added)).

---

[1]Plaintiff alleges that Deputy Ferris and Ms. Kiser had been involved in a sexual relationship.  As cogently noted by the magistrate judge, that fact has little bearing upon the objective analysis governing Count One.

During that conversation, however, and despite being read its terms and the statutory penalty for disobedience to a lawful custody order, plaintiff in no way indicated to Deputy Ferris that the Amended Interim Order was not officially sanctioned by the family court.  Indeed, plaintiff offered no explanation at all for his actions beyond the opaque suggestion that retaining the infant was necessary for child welfare purposes.  Believing plaintiff had illegally taken custody of the infant in violation of the Amended Interim Order, Deputy Ferris arrested plaintiff based upon an alleged violation of section 61-2-14d.

Inasmuch as the Amended Interim Order lacked Judge Tallman's signature, plaintiff enjoyed a complete defense to the alleged violation of section 61-2-14d.  That is not to say, however, as a matter of clearly established law, that Deputy Ferris lacked "a reasonable ground for belief" or a "probability, . . . of criminal activity . . . ." that warranted action on his part, especially inasmuch as the apparent unlawful, continued custody of an infant child was at issue.  The court, accordingly, concludes that Deputy Ferris is entitled to qualified immunity as to Count One.[2]

---

[2]Inasmuch as probable cause supported the first arrest, the court need not address plaintiff's additional allegation that Deputy Ferris maliciously obtained a signed, but otherwise blank,
(continued...)

C.    Plaintiff's Objections

        Plaintiff's objections are directed toward the
magistrate judge's recommendation of dismissal for that portion
of Count Three alleging a civil conspiracy.  As to the remaining
portion of Count Three beyond the civil conspiracy allegations,
the magistrate judge noted a viable retaliation claim grounded in
the First Amendment.  Neither party objects to the characteriza-
tion, or the analysis conducted, by the magistrate judge on the
retaliation claim.[3]

        Each of plaintiff's two arrests appear to form the
basis for dual, separate alleged conspiracies found in Count
Three.  Regarding the first arrest, as noted, plaintiff alleges

_____

        [2](...continued)
arrest warrant for plaintiff from Magistrate Eugene Crum, as
discussed more fully infra.
        Additionally, the court recognizes that its qualified
immunity analysis as to Count One may impact the ultimate
disposition of Count Four insofar as it alleges a malicious
prosecution claim against Deputy Ferris arising out of the first
arrest.  Inasmuch as Deputy Ferris has explicitly not objected to
that portion of the PF&R relating to the Count Four malicious
prosecution claim, the court declines to address the matter.
See, e.g., Dep. Ferris' Objecs. at 5 ("At this time the defendant
does not challenge the Court's proposed Findings and
Recommendations . . . as they relate to plaintiff's claims for
unlawful retaliation or malicious prosecution.").

        [3]The court thus does not reach the potential applicability,
and impact, of Hartman v. Moore, 547 U.S. 250 (2006), which the
magistrate judge and the parties are free to revisit when the
case is referred anew.

that Deputy Ferris maliciously obtained a signed arrest warrant,
otherwise blank, from Magistrate Eugene Crum, and further
conspired with Ms. Kiser, in order to falsely arrest plaintiff on
the felony child concealment charge.  Regarding the second
arrest, plaintiff merely alleges that "defendants['] arrest of
the plaintiff after the plaintiff filed the instant civil lawsuit
constitutes unlawful . . . conspiracy . . . ."  (Sec. Am. Compl.
¶ 50).

        The magistrate judge recommends that the conspiracy
allegations in Count Three be deemed conclusory and dismissed for
failure to state a claim.  Plaintiff responds that his
allegations are not conclusory.  In his objections, he offers the
following support for his conspiracy claim concerning the first
arrest:

    The facts of this conspiracy between Ferris, Crum and
    others (who may or may not be defendants in this civil
    action) are such:

    Multiple witnesses, including a Mingo County
    Commissioner, allegedly saw Deputy Ferris, Magistrate
    Crum, the then Kristy Kiser and the Curry family, all
    collaborate in regards to this case at the Williamson
    Fire Department on November 15, 2003.

    Deputy Ferris then received a blank, signed arrest
    warrant from Magistrate Crum that same night.  This
    establishes proof that these individuals conspired to
    improperly prosecute Plaintiff.

    The conspiratorial act between Deputy Ferris,
    Magistrate Crum, and the Mingo County Sheriff's
    Department took place as an unlawful act; Magistrate

> Crum was not in his chambers when he signed the warrant
> for the arrest of the Plaintiff.
>
> Since Deputy Ferris was employed at the time by the
> Mingo County Sheriff's Department, by way of a priori
> reasoning, the Sheriff's Department is also a co-
> conspirator against the Plaintiff.

(Objecs. at 2-3 (paragraph designations omitted)).

Regarding the second arrest, plaintiff's conspiracy
claim is difficult to characterize.  Plaintiff appears to assert
in his objections that a member of the West Virginia State
Police, "Officer Smith," who also served on "the West Virginia
Drug Task Force," was pressured to pursue the federal charges
against plaintiff following the second arrest.  (Objecs. at 5).
He offers the following substantive time line of events
supporting the conspiracy claim:

> In the summer of 2005 Etta Blankenship, then the
> Plaintiff's fiance[e], told the Plaintiff that she was
> working as an "undercover" agent for . . . Smith in the
> Logan-Mingo County area of West Virginia.  This is all
> I will discuss on this matter until this action goes to
> court.
>
> [I] . . . was asked by . . . [Etta] to make sure . . .
> [I] was not . . . home . . . one day during the summer
> of 2005.  A meeting took place there between . . .
> [Etta, Smith, Wood County Sheriff Ken Merritt] . . .
> and at least 2 other members of what . . . [Etta] said
> were "Federal undercover drug agents."  The plaintiff
> has phone records and first names in his personal
> property that can prove these facts.
>
> From this meeting, the Plaintiff first became
> aware that the Mingo County Sheriff's Department and

10

others were urging the Feds to intervene against Dr.
Kiser.

Also, the plaintiff was told by Deputy Smith (not the
same Smith as mentioned above) of the Mingo County
Sheriff's Department plus two other Sheriff's Deputies,
that their department was urging the Feds to intervene
against Dr. Kiser, since their department sensed that
"they would not win their state case against Dr.
Kiser."

(Id. at 5-7 (emphasis added)).

In analyzing these additional allegations, plaintiff's
objections relating to the first arrest distill down to unnamed
witnesses seeing Deputy Ferris, Magistrate Crum, Ms. Kiser and
others "collaborate" about plaintiff, resulting in the issuance
of a signed, but otherwise blank, warrant for his arrest.
Regarding the second arrest, plaintiff's objections allege that a
meeting occurred between his fiancee, law enforcement, and others
unnamed, to pursue federal criminal charges ultimately resulting
in his conviction, based upon the perceived weakness of the state
controlled substance charges then pending against him.  As noted,
the state criminal charges were found by the presiding state
circuit court judge to be "similar" to the federal charges, one
of which resulted in plaintiff's conviction.

The court concludes that the magistrate judge correctly
dismissed the conspiracy allegations.  As supplemented by the

11

aforementioned, additional allegations found in plaintiffs'
objections, the conspiracy contentions still fail to state
sufficient facts to construct a plausible claim.  As noted
recently by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 129 S. Ct.
1937, 1949 (2009),

> A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw
> the reasonable inference that the defendant is liable
> for the misconduct alleged. The plausibility standard
> is not akin to a "probability requirement," but it asks
> for more than a sheer possibility that a defendant has
> acted unlawfully.  Where a complaint pleads facts that
> are "merely consistent with" a defendant's liability,
> it "stops short of the line between possibility and
> plausibility of 'entitlement to relief.' "
>
> [W]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."

<u>Iqbal</u>,  129 S. Ct. at 1949-50 (citations omitted).

        The court, accordingly, concludes that the plaintiff's
objections are not meritorious.


                              II.


        Based upon the foregoing discussion, it is ORDERED as
follows:

        1.    That the magistrate judge's PF&R be, and it hereby is,
              adopted and incorporated herein in its entirety, with
              the exception of its analysis relating to Count One;

2.    That Deputy Ferris' motion to dismiss be, and it hereby
      is, granted as to Counts One and Two in their entirety,
      as to Count Three, insofar as it attempts to allege a
      conspiracy claim, and as to Count Four, insofar as it
      alleges a malicious prosecution claim concerning the
      state controlled substance charges, and denied in all
      other respects;

3.    That the motion to dismiss filed by the Mingo County
      Sheriff's Department and the Mingo County Commission
      be, and it hereby is, granted in all respects as to the
      Mingo County Commission, granted as to the Mingo County
      Sheriff's Department concerning Count Three, insofar as
      it attempts to allege a conspiracy claim, and as to
      Count Four, insofar as it alleges a malicious
      prosecution claim concerning the state controlled
      substance charges, and denied in all other respects;

4.    That the remaining claims are referred anew to the
      magistrate judge for further proceedings in accordance
      with the February 25, 2009, referral order.

13

The Clerk is directed to forward copies of this written opinion and order to counsel of record, the _pro_ _se_ plaintiff, and the United States Magistrate Judge.

DATED:  March 4, 2010

John T. Copenhaver, Jr.
United States District Judge

14