IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

DONALD R. KISER,

       Plaintiff,

v.                                    Case No. 2:04-cv-01214

J.D. FERRIS, in his
individual and official
capacity as a sheriff's
deputy for the County of
Mingo, and MINGO COUNTY SHERIFF'S
DEPARTMENT,

       Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court are a Motion for Summary Judgment filed by the Mingo County Sheriff's Department (docket sheet document # 161) and a Motion for Summary Judgment filed by J.D. Ferris (# 163).  This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

### Allegations against defendant J.D. Ferris

Plaintiff's Second Amended Complaint asserts that, during the course of their divorce proceedings, Plaintiff and his ex-wife, Kristy Kiser, negotiated a visitation schedule to permit Plaintiff

to have custodial visitation with his infant son on certain dates and at certain times.  (# 98 at 2, ¶ 8).  On November 15, 2003, Plaintiff was scheduled to have visitation with his son from 12:00 p.m. until 2:00 p.m.  (<u>Id.</u>, ¶ 9).  On that date, Plaintiff picked up his son, but was delayed for about 30 minutes because of what he alleges was misconduct by his ex-wife at the time of delivery.  (<u>Id.</u>, ¶ 10).  Plaintiff did not return his son to Ms. Kiser by 2:00 p.m. "because the Plaintiff reasonably believed that keeping his son was necessary to protect the welfare of his son." (<u>Id.</u>, ¶ 11).

The Second Amended Complaint further states, upon information and belief, that Ms. Kiser contacted defendant J.D. Ferris, a Deputy Sheriff, employed by the Mingo County Sheriff's Department, and requested that he arrest Plaintiff for failing to return her son.  (<u>Id.</u>, ¶ 13).  Plaintiff states that Ferris obtained a warrant for Plaintiff's arrest, citing a violation of West Virginia Code § 61-2-14d(a), which states that:

> Any person who conceals, takes or removes a minor child in violation of any court order and with the intent to deprive another person of lawful custody or visitation rights shall be guilty of a felony, and upon conviction thereof, shall be imprisoned in the penitentiary not less than one nor more than five years, or in the discretion of the court, shall be imprisoned in the county jail not more than one year or fined not more than one thousand dollars, or both fined and imprisoned.

W. Va. Code § 61-2-14d(a).  Plaintiff further states that he was arrested on November 15, 2003, pursuant to that warrant.  (<u>Id.</u>, ¶¶ 14-20).

The Second Amended Complaint alleges that Plaintiff's arrest was made based upon an "Amended Interim Order" setting forth the proposed visitation schedule, which had been agreed to and executed by the Plaintiff and Ms. Kiser, and their counsel, but which had not yet been entered by the Family Court of Wood County, West Virginia.[1]   Plaintiff alleges that defendant Ferris spoke by telephone with Plaintiff on November 15, 2003 and recited both the applicable West Virginia Code section provision and the applicable "Amended Interim Order."  Thus, Ferris should have seen that the "Amended Interim Order" did not bear a judge's signature.  In fact, Plaintiff alleges that the Amended Interim Order was not entered until November 19, 2003, four days after Plaintiff's arrest. (Id., ¶¶ 22-23).  Consequently, Plaintiff alleges that the warrant for his arrest for a violation of W. Va. Code § 61-2-14d(a) was invalid and that Plaintiff was unconstitutionally arrested on such a charge. (Id., ¶¶ 14-16).

Plaintiff further alleges that defendant Ferris did not make any attempt to determine whether Plaintiff "reasonably believed such action (in keeping his son) was necessary to preserve the welfare of the minor child," in accordance with W. Va. Code § 61-2-14d(c). (Id., ¶ 24).  Plaintiff further alleges that, by the time

---

[1]   The "Amended Interim Order" was supposed to be attached to the Second Amended Complaint as Exhibit A, but it was not.  The "Amended Interim Order" is in the record at docket # 90-5 at 1-2, bearing deposition exhibit labels.  It does not bear the signature of a Family Court Judge.

he was arrested, his son was back in the custody of Ms. Kiser.  The
charge against Plaintiff arising out of his arrest on November 15,
2003 was subsequently dismissed.  (<u>Id.</u>, ¶¶ 27-28).  Plaintiff
alleges that the conduct of defendant Ferris was motivated, in
part, because he had been involved in a sexual relationship with
Ms. Kiser.  (<u>Id.</u>, ¶ 26).

Allegations against the Mingo County defendants

After the dismissal of the November 15, 2003 charge, Plaintiff
filed the instant lawsuit on November 12, 2004.  (<u>Id.</u>, ¶ 29).
Plaintiff was subsequently arrested on February 23, 2005 by the
Mingo County Sheriff's Department on 25 charges of illegally
issuing prescriptions for controlled substances, in violation of W.
Va. Code § 60A-4-401(a)(ii).  (<u>Id.</u>, ¶ 30).  Plaintiff's Second
Amended Complaint alleges that his second arrest was made in
retaliation for his filing of this lawsuit, and alleges that
employees of the Mingo County Sheriff's Department have stated that
his arrest was made in retaliation for the filing of this lawsuit.
(<u>Id.</u>, ¶¶ 31-32).

Plaintiff alleges that, as a result of the second criminal
charges filed against him, which ultimately resulted in Plaintiff's
guilty plea to drug charges in this federal court[2], he has lost his

---

[2] Subsequent to the filing of the Second Amended Complaint,
on April 17, 2007, Plaintiff was indicted by a federal grand jury
in the United States District Court for the Southern District of
West Virginia in an 18 count indictment, which included among other
things, allegations of the unlawful distribution of controlled

employment and continues to suffer significant financial damages.
(Id., ¶ 33).   Plaintiff further alleges that the conduct of the
defendants was "outrageous and malicious and constitutes
intentional infliction of emotional distress, warranting an award
of punitive damages against the defendants." (Id., ¶ 34).

Plaintiff's Second Amended Complaint contains six counts,
which include claims of false arrest for child concealment (Count
I), use of excessive force during the arrest for child concealment
(Count II), unlawful retaliation by Ferris and conspiracy between
Ferris and a Mingo County magistrate concerning Plaintiff's first
arrest (Count III), unlawful retaliation and conspiracy by "the
defendants" concerning Plaintiff's second arrest (Count III),
malicious prosecution as to both arrests (Count IV), municipal
liability (Count V), and supervisory liability (Count VI).
Plaintiff seeks compensatory and punitive damages, as well as
injunctive relief in the form of training and supervision and
discipline of the defendants.

---

substances in violation of 21 U.S.C. §§ 841 and 846.  (United
States v. Kiser, No. 2:07-cr-00074-01, Indictment, # 1).  On June
5, 2007, Plaintiff pled guilty to Count One of the indictment.
(Id., Written Guilty Plea, # 77).  On February 6, 2008, Plaintiff
was sentenced to serve an 87-month sentence in a federal
correctional facility, which he is presently serving at FCI Ft. Dix
in New Jersey. (Id., Judgment in a Criminal Case, # 125).  Because
these charges duplicated the Mingo County drug charges, the Mingo
County charges were dismissed by the Mingo County prosecutor,
pursuant to a Final Nolle Prosequi Order on July 31, 2008. (# 131,
Ex. 4).

Judge Copenhaver's prior Memorandum Opinion and Order

On March 4, 2010, the presiding District Judge issued a Memorandum Opinion and Order adopting in part and overruling in part the undersigned's Proposed Findings and Recommendation ("PF&R") submitted on February 8, 2010 (# 151).  By way of the Memorandum Opinion and Order, the presiding District Judge dismissed the false arrest claim contained in Count I, the claim of excessive force contained in Count II, the conspiracy claims contained in Count III, and the malicious prosecution claim concerning his drug charges contained in Count IV of Plaintiff's Second Amended Complaint.  Accordingly, at this time, the following five (5) claims remain before the court: Plaintiff's retaliation claim concerning his arrest on the child concealment charge, contained in Count III, the malicious prosecution claim concerning Plaintiff's child concealment charge contained in Count IV, Plaintiff's retaliation claim concerning Plaintiff's second arrest on drug charges contained in Count III, and the supervisory and municipal liability claims contained in Counts V and VI.

Judge Copenhaver's Memorandum Opinion and Order made the following findings of fact and conclusions of law concerning Plaintiff's arrests:

> The first arrest ("first arrest"), on November 15, 2003, as discussed more fully infra, resulted from plaintiff's failure to timely return his son to his former spouse, Kristy Kiser, despite a warning from Deputy Ferris to do so.  Following the warning, Deputy Ferris arrested plaintiff based upon a perceived violation of West

Virginia Code § 61-2-14d(a).  That section provides for felony treatment of one "who conceals, takes, or removes a minor child in violation of any court order and with intent to deprive another person of lawful custody or visitation rights . . . ." Id.

The second arrest ("second arrest"), on February 23, 2005, was made by unnamed members of the Mingo County Sheriff's Department.  It was based upon 25 state charges alleging that plaintiff illegally issued controlled substances in violation of West Virginia Code § 60A-4-401(a)(ii).  Plaintiff was subsequently charged by the United States Attorney on April 17, 2007, in an 18-count indictment filed in this district alleging, inter alia, violations of 21 U.S.C. § 841 and 846.  Following his guilty plea to Count One of the federal indictment, which alleged that he knowingly and intentionally conspired to distribute oxycodone, hydrocodone, and Alprazolam, plaintiff was sentenced to 87 months imprisonment.  A July 31, 2008, "FINAL NOLLE PROSEQUI ORDER" entered by the state circuit judge presiding over the state charges dismissed those offenses, finding "[i]n April 2007, the Defendant was indicted for similar charges in the United States District Court for the Southern District of West Virginia." (Ex. 4, Defs. Mot. to Dism.).

(# 156 at 2-3).  Concerning the false arrest claim contained in Count One of Plaintiff's Second Amended Complaint, Judge Copenhaver's Memorandum Opinion and Order made these specific findings:

As noted in brief earlier, the undisputed facts relating to the first arrest are set forth in the Second Amended Complaint.  On the relevant date, Saturday, November 15, 2003, plaintiff and Ms. Kiser were in the midst of divorce proceedings.  Plaintiff had physical custody of the estranged couple's infant son beginning at 12:00 p.m. on that date pursuant to a document styled "Amended Interim Order" signed by counsel for both plaintiff and Ms. Kiser in the divorce proceedings.  The Amended Interim Order lacked the signature of C. Darren Tallman, the presiding Family Court Judge.  Judge Tallman did not sign and enter the Amended Interim Order until November 19, 2003.

7

The Amended Interim Order explicitly provided for plaintiff to return the infant to Ms. Kiser by 2:00 p.m. on November 15, 2003.  Plaintiff did not comply.  Ms. Ferris [sic; Kiser] complained to Deputy Ferris about plaintiff's actions, apparently providing him a copy of the Amended Interim Order. [FN 1]  There is no indication that Deputy Ferris had the means to verify with the circuit clerk the entry of the Amended Interim Order inasmuch as the controversy arose on a Saturday.  Instead of acting precipitously in a tense custody dispute, however, Deputy Ferris contacted plaintiff in an effort to investigate further and warn of the consequences of unlawfully retaining custody of the infant.  According to plaintiff, Deputy Ferris "recited portions of West Virginia Code § 61-2-14d <u>and portions of . . . [the]</u> <u>'Amended Interim Order'</u>" to him.  (Sec. Am. Compl. ¶ 15 (emphasis added)).

[FN 1 - Plaintiff alleges that Deputy Ferris and Ms. Kiser had been involved in a sexual relationship.  As cogently noted by the magistrate judge, that fact has little bearing upon the objective analysis governing Count One.]

During that conversation, however, and despite being read its terms and the statutory penalty for disobedience to a lawful custody order, plaintiff in no way indicated to Deputy Ferris that the Amended Interim Order was not officially sanctioned by the family court.  Indeed, plaintiff offered no explanation at all for his actions beyond the opaque suggestion that retaining the infant was necessary for child welfare purposes.  Believing plaintiff had illegally taken custody of the infant in violation of the Amended Interim Order, Deputy Ferris arrested plaintiff based upon an alleged violation of section 61-2-14d.

Inasmuch as the Amended Interim Order lacked Judge Tallman's signature, plaintiff enjoyed a complete defense to the alleged violation of section 61-2-12d.  That is not to say, however, as a matter of clearly established law, that Deputy Ferris lacked "a reasonable ground for belief" or a "probability . . . of criminal activity . . . ." that warranted action on his part, especially inasmuch as the apparent unlawful, continued custody of an infant child was at issue.  The court, accordingly, concludes that Deputy Ferris is entitled to qualified immunity as to Count One. [FN 2]

[FN 2 - Inasmuch as probable cause supported the first arrest, the court need not address plaintiff's additional allegation that Deputy Ferris maliciously obtained a signed, but otherwise blank arrest warrant for plaintiff from Magistrate Eugene Crum, as discussed more fully <u>infra</u>.

Additionally, the court recognizes that its qualified immunity analysis as to Count One may impact the ultimate disposition of Count Four insofar as it alleges a malicious prosecution claim against Deputy Ferris arising out of the first arrest. Inasmuch as Deputy Ferris has explicitly not objected to that portion of the PF&R relating to the Count Four malicious prosecution claim, the court declines to address the matter. <u>See</u>, <u>e.g.</u>, Dep. Ferris' Objecs. at 5 ("At this time the defendant does not challenge the Court's [P]roposed Findings and Recommendations . . . as they relate to plaintiff's claims for unlawful retaliation or malicious prosecution.").]

(<u>Id.</u> at 5-8).

## THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

The defendants' present Motions for Summary Judgment (## 161 and 163) are predicated on Judge Copenhaver's prior rulings. Both motions rely upon the Supreme Court's decision in <u>Hartman v. Moore</u>, 547 U.S. 250 (2006), arguing that the District Court's finding that probable cause existed for both of Plaintiff's arrests is fatal to all of Plaintiff's remaining claims.

In evaluating summary judgment motions, Rule 56 of the Federal Rules of Civil Procedure provides:

The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c) (2007). Material facts are those necessary

9

to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  <u>Id.</u>  The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  <u>Overstreet v. Kentucky Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

If the moving party meets this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); <u>Id.</u> at 322-23.

> [A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir.

10

1995), nor make determinations of credibility.  <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

<u>**ANALYSIS**</u>

**A.    Retaliation and malicious prosecution claims**

In Count III of his Second Amended Complaint, Plaintiff claims that Deputy Ferris arrested Plaintiff on the child concealment charges, without probable cause, in retaliation for Plaintiff's threat to report to Mingo County authorities that Deputy Ferris had a sexual relationship with Plaintiff's ex-wife.  Count III of Plaintiff's Second Amended Complaint further alleges that Plaintiff's arrest after he filed the instant lawsuit (referring to Plaintiff's arrest on drug charges, and hereinafter referred to as "Plaintiff's second arrest"), was made in retaliation for Plaintiff's filing of the instant lawsuit.  In Count IV, Plaintiff further alleges that he was maliciously prosecuted on the child concealment charge.

The elements of a retaliation claim are: (1) that the plaintiff engaged in protected activity; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) that the adverse action was motivated, at least in part, by the plaintiff's protected conduct. See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).

> Under Mt. Healthy and its progeny, an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech. [Footnote omitted.] This doctrine demonstrates that, at least, where the First Amendment is concerned, the motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech precedes government action affecting that individual. [Footnote omitted.]

Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).

A malicious prosecution claim brought under section 1983 is grounded in the Fourth Amendment, but incorporates elements of the common law tort of malicious prosecution. Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). A claim for malicious prosecution under West Virginia law requires proof of four elements: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. See, e.g., Morton v. Chesapeake and Ohio Ry. Co., 399 S.E.2d 464 (W. Va. 1990); Brooks v. City of Winston-Salem, 85 F.3d 178, 183-84 (4th Cir. 1996).

The Sheriff's Department's Motion for Summary Judgment (# 161) and Memorandum of Law in support thereof (# 162) argue as follows:

> In <u>Hartman v. Moore</u>, 547 U.S. 250 (2006), the Supreme Court has held that, in a retaliatory-prosecution action, a plaintiff must plead and show the absence of probable cause for pressing the underlying criminal charges. Thus, just as the plaintiff's malicious prosecution claim was subject to dismissal on the grounds that probable cause for the plaintiff's arrest on drug charges has been conclusively established, so too is plaintiff's retaliation claim.
>
> As plaintiff cannot possibly show a lack of probable cause for his second arrest, no other factual development is necessary.  Plaintiff cannot prove an essential element of his claim for retaliation, and that claim should therefore be dismissed with prejudice.  This defendant therefore requests summary judgment be granted in its favor on plaintiff's retaliation claim against it.

(# 162 at 5).  Defendant Ferris's Memorandum of Law in support of his Motion for Summary Judgment similarly states:

> Here, in the plaintiff's claims against Deputy Ferris, the absence of probable cause was pleaded in Count III.  However this court found - for the previously discussed reasons that were set forth in its Memorandum Opinion and Order (Document 156) - that the plaintiff has not proven the absence of probable cause.  Consequently, Deputy Ferris is entitled to qualified immunity regarding the retaliatory prosecution component of Count III, for the same reason that he was entitled to that immunity regarding the false arrest claim of Count I.

(# 164 at 3-4).

In <u>Hartman</u>, the Supreme Court stated:

> Official reprisal for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right." <u>Crawford El v. Britton</u>, 523 U.S. 574, 588 n.10 118 S. Ct. 1584, 140 L. Ed.2d 759 (1998), and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions,

13

including criminal prosecutions, for speaking out, <u>id.</u> at 592, 118 S. Ct. 1584; see also <u>Perry v. Sindermann</u>, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed.2d 570 (1972)(noting that the government may not punish a person or deprive him of a benefit on the basis of his "constitutionally protected speech").

* * *

In an action for malicious prosecution after an acquittal, a plaintiff must show that the criminal action was begun without probable cause for charging the crime in the first place; the [defendants/petitioners] see retaliatory prosecution under <u>Bivens</u> as a close cousin of malicious prosecution under common law, making the latter's no-probable-cause requirement a natural feature of the constitutional tort. See <u>Heck v. Humphrey</u>, 512 U.S. 477, 483-485, and 484 n.4, 114 S. Ct. 2364, 129 L. Ed.2d 383 (1994).

* * *

Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive.

* * *

Accordingly, the significance of probable cause or lack of it looms large, being a potential feature of every case, with obvious evidentiary value. True, it is not necessarily dispositive: showing an absence of probable cause may not be conclusive that the inducement succeeded, and showing its presence does not guarantee that inducement was not the but-for fact in a prosecutor's decision. But a retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of regularity behind the charging decision, see <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed.2d 604 (1978) (emphasizing that "so long as the prosecutor has probable cause," the charging decision is generally discretionary), and enough

14

for a prima facie inference that the unconstitutionally
motivated inducement infected the prosecutor's decision
to bring the charge.

* * *

    In sum, the complexity of causation in a claim that
prosecution was induced by an official bent on
retaliation should be addressed specifically in defining
elements of the tort.  Probable cause or its absence will
be at least an evidentiary issue in practically all such
cases.  Because showing an absence of probable cause will
have high probative force, and can be made mandatory with
little or no added cost, it makes sense to require such
a showing as an element of a plaintiff's case, and we
hold that it must be pleaded and proven.

547 U.S. at 256, 258, 265-266.

    Plaintiff alleges that his first arrest and prosecution were
pursued by defendant Ferris with a retaliatory motive based upon
Plaintiff's threats to report Ferris's alleged relationship with
Plaintiff's ex-wife.  Plaintiff further alleges that his second
arrest and prosecution were undertaken in response to, and in
retaliation for, his filing of the instant lawsuit, all of which is
protected activity under the First Amendment.  Plaintiff has also
alleged that there are employees of the Mingo County Sheriff's
Department who have admitted that the second arrest and prosecution
was motivated, at least in part, to retaliate for Plaintiff's
having filed the instant lawsuit.

    However, after receiving a notice pursuant to the holding in
Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) (# 157), on
August 12, 2010, Plaintiff filed a Response to the Motions for
Summary Judgment in which he asserts that he is not adequately able

15

to research and defend against the defendants' motions because of the limited law library at the federal facility where he is incarcerated.   Plaintiff further asserts that, due to his incarceration and lack of counsel, he could not perform additional discovery; yet Plaintiff has not identified any specific discovery that he feels he has been denied the right to conduct or what admissible evidence he believes additional discovery would have revealed.   Plaintiff again requests that counsel be appointed to represent him.   Plaintiff's Response does not address the substantive merits of the case at all.   (# 165).

Specifically, Plaintiff has not produced any evidence at all to support his bare allegations that both of his arrests were made and his prosecutions pursued with a retaliatory animus.   Thus, he cannot overcome the strong presumption that the defendants acted for a non-retaliatory reason based upon the court's prior finding of probable cause for both arrests and the initiation of both prosecutions.   Accordingly, Plaintiff is unable to establish the essential element of a retaliatory motive for the defendants' conduct.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law on Plaintiff's retaliation claims in Count III, and Plaintiff's malicious prosecution claim concerning Plaintiff's

child concealment charge, contained in Count IV of Plaintiff's Second Amended Complaint.

**B.   Plaintiff's Municipal and Supervisory Liability Claims.**

In Counts V (Municipal Liability) and Count VI (Supervisory Liability), Plaintiff alleges that his constitutional rights were violated by the implementation of customs, policies or official acts by defendant Ferris and the Mingo County Sheriff's Department concerning the following:

> the failure to train, supervise or discipline its agents and/or officers regarding the circumstances which constitute probable cause for an arrest and regarding the proper use of force during an arrest; the failure of said Defendants to adequately train, supervise, and discipline its agents and/or officers regarding unlawful arrest and retaliation, malicious prosecution and abuse of process against citizens for simply exercising their Federal and State constitutional rights.

(# 98 at 9).   Plaintiff further alleges, upon information and belief, that certain of these defendants' agents and/or officers "have admitted improperly retaliating against the plaintiff so as to create a reasonable inference that such misconduct is tolerated by the defendants."   (Id.)

The Second Amended Complaint further alleges that the Mingo County Sheriff's Department had actual or constructive knowledge of the policy, practice or custom that led to the alleged violation of Plaintiff's constitutional rights and have exhibited a deliberate indifference to the violations of citizens' rights.   (Id. at 10).

17

The Mingo County Sheriff's Department's Memorandum of Law addresses these claims as follows:

> The claims of municipal and supervisory liability require that the plaintiff show that Mingo County, as a an entity, acting through its policy-making personnel, knew of and deliberately adopted a custom, practice, or policy relating to probable cause, retaliation, or malicious prosecution, and that such a custom or policy was the moving force in the alleged violation of one or more of the plaintiff's constitutional rights.  Further, these claims require that Mingo County, as an entity, be shown to be so grossly deficient in its supervision of employees that the relevant constitutional violations were virtually certain to happen eventually.   The evidentiary standard for the claims set forth in Counts V and VI is high and cannot be met by the plaintiff.

(# 162 at 2-3).   The Memorandum of Law further addresses these claims as follows:

> In Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987), a case brought under 42 U.S.C. § 1983 against a municipality and several of its police officers, the court noted that such government entities may not be held liable for the constitutional violations attributed to their employees under the principles of respondeat superior.   To the contrary, pursuant to the Supreme Court's holding in Monell v. Dep't of Social Services, 436 U.S. 658 (1978) such an entity may only be held liable where it is shown that it is the execution of official policy, custom, or usage that inflicts the injury.  824 F.2d at 1385.

> Official policy is most obvious when expressed in the form of regulations or ordinances that clearly "command or authorize" constitutional violations, but it may also be found in the ad hoc policy decisions of officials authorized to make and implement policy.  Id. In addition to official policy, liability may be warranted if the entity is found to have a custom or usage authorizing the specific constitutional violations complained of, i.e., persistent and widespread practices that are so permanent and settled as to have the force of law.   Id. at 1386.   Such a custom must be fairly attributable to the government entity as its own and must

serve as the moving force behind the particular
constitutional violation at issue. Id. at 1386-87.
Thus, the isolated acts of a single employee, such as
Deputy J.D. Ferris, or a small number of employees
cannot, as a matter of law, be sufficient to show the
existence of "persistent and widespread practices" that
"are so permanent and well-settled as to have the force
of law." Russell v. Town of Chesapeake, 817 F. Supp. 38,
41 (S.D. W. Va. 1993)(citing Spell and Monell).

Custom and usage may only be attributed to a
government entity, where the "duration and frequency of
the practices warrants a finding of either actual or
constructive knowledge by the [entity] **that the practices
have become customary among its employees.**" Spell, 824
F.2d at 1387)(emphasis added). The Fourth Circuit has
also noted that "[w]hen a . . . 'policy or custom' is
itself unconstitutional, i.e., when it directly commands
or authorizes constitutional violations, the causal
connection between policy and violation is manifest and
does not require independent proof. **But a policy or
custom that is not in itself unconstitutional in this
strict sense must be independently proven to have caused
the violation.**" Id. at 1387-88(emphasis added). Here
there is no evidence of an express unconstitutional
policy or custom, either formal or informal, adopted by
Mingo County or its policymakers. Even if the acts of
Deputy J.D. Ferris, as complained of, are presumed to
have occurred as alleged, there is no evidence sufficient
to show that such acts were "of such duration and
frequency" that Mingo County may be found to have acted
with actual or constructive knowledge that such actions
were customary practices.

(Id. at 5-7).

Concerning the supervisory liability claim, the Mingo County

Sheriff's Department's Memorandum of Law argues:

In cases dealing with claims based upon the failure
to supervise employees filed pursuant to 42 U.S.C. §
1983, the courts have held that a government entity can
only be deemed responsible for the acts of its employees,
under the theory that the entity failed to train or
supervise its employees, if the wrongful act or acts
reflect the policy of that government entity. Failure to

investigate a particular incident "falls far short of establishing a pattern of comparable practices sufficient to demonstrate a policy resulting from condoned custom." Russell v. Town of Chesapeake, 817 F. Supp. 38, 42 (S.D. W. Va. 1993).

The acts or omissions of a government entity are actionable only if they constitute the "tacit authorization" of or "deliberate indifference" to constitutional injuries. A policy of condoning misconduct may be inferred where the entity has been grossly negligent in the training and supervision of its police force, "but a failure to supervise gives rise to . . . liability only in situations where there is a history of widespread abuse." Id. Further, to the extent that the plaintiff contends that Mingo County failed to supervise and failed to establish adequate policies or procedures relating to supervision or discipline, he must also show that these factors constituted the "moving force" behind the constitutional violations he allegedly suffered. Id.

It is not enough for the plaintiff to show that Mingo County was generally lax or ineffective in its training or supervision of officers. It is not sufficient for the plaintiff to show that the alleged constitutional violations might have been prevented or somehow mitigated by the adoption of new or different procedures, or that the inappropriate actions of a single officer or a small group of officers escaped detection or discipline. It is not even sufficient for the plaintiff to show that the alleged constitutional violations were "likely to happen in the long run." To the contrary, it must be shown that specific deficiencies on the part of Mingo County were so serious as to make the constitutional violations "almost bound to happen, sooner or later." Spell v. McDaniel, 824 F.2d 1380, 1390-91 (1987). Thus, the plaintiff must show that specific acts or omissions properly attributed to Mingo County were such as to make it almost certain that an employee of the Sheriff's Department would commit constitutional violations of the type alleged, and still pending, here, i.e., retaliation or malicious prosecution, and that those constitutional violations were the cause of the damages the plaintiff now claims.

(Id. at 7-8).

20

The Mingo County Sheriff's Department argues that the evidence in this case is simply not sufficient to support claims of municipal and supervisory liability.  "A single arrest, or the investigation of a single crime, however mishandled, does not provide adequate proof." (<u>Id.</u> at 10).

Again, Plaintiff has produced no evidence whatsoever to support his claims of supervisory or municipal liability against the Mingo County Sheriff's Department.  Therefore, the undersigned proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law on Plaintiff's claims of municipal and supervisory liability contained in Counts V and VI of Plaintiff's Second Amended Complaint.

## **<u>RECOMMENDATION</u>**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion for Summary Judgment filed by the Mingo County Sheriff's Department (# 161) and the Motion for Summary Judgment filed by defendant J.D. Ferris (# 163) and dismiss this case from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of

Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (mailing), from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Judge Copenhaver.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

|  |  |
|---|---|
| October 26, 2010 | Mary E. Stanley |
| Date | Mary E. Stanley |
|  | United States Magistrate Judge |

22